UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Michelle CLARK,<br><br>                      Plaintiff,<br><br>v.<br><br>Nancy A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                      Defendant. | Case No.: 16-cv-2854-BEN-AGS<br><br>**REPORT AND RECOMMENDATION ON SUMMARY JUDGMENT MOTIONS (ECF Nos. 26 & 27)** |

This Social Security case concerns the treating physician rule and the procedure for assessing a treating doctor's opinion that does not warrant "controlling weight."

## **BACKGROUND**

After a disability hearing, the Administrative Law Judge found that plaintiff Jennifer Clark had three severe physical impairments, a severe learning disorder, and non-severe anxiety and depression. (AR 15-16.) Four mental-health experts—two examining psychologists and two agency consultants—concluded that Clark could work. (AR 21, 23.) Yet Clark's own treating psychiatrist, Deborah Birnbaum, D.O., believed that Clark's mental impairments made it "unlikely" that she can "maintain stability during a workday." (AR 23.) In denying Clark disability benefits, the ALJ favored the opinions of the four non-treating experts over Dr. Birnbaum's opinion.

1

On appeal, Clark argues that Dr. Birnbaum's opinion deserved controlling weight. In the alternative, she argues that the ALJ failed to consider the required regulatory factors in weighing Dr. Birnbaum's opinion.

## DISCUSSION

### A. Standard of Review

This Court will only set aside the denial of Social Security benefits when the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Even when "the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). The "substantial evidence" standard is even "more deferential [to the agency] than 'clearly erroneous.'" *Stern v. Marshall*, 564 U.S. 462, 515 (2011) (citation omitted); *see also Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999) (explaining that the "clearly erroneous" standard allows "somewhat closer judicial review" than the more deferential "substantial evidence" standard used for evaluating agency decisions (citations omitted)).

### B. Treating Physician Rule

"A treating physician's opinion is generally due 'controlling weight.'" *O'Neal v. Astrue*, 391 F. App'x 614, 616 (9th Cir. 2010) (citation omitted). If a treating doctor's opinion is contradicted, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (citation omitted). This standard is satisfied when the ALJ relies on the contrary opinion of an examining physician that is based on "objective medical tests that the treating physician has not herself considered." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation

omitted); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. *Conflicting Medical Opinions Based on Independent Clinical Findings*

Although Clark's treating psychiatrist believed she was "unlikely . . . to maintain stability during a workday," the ALJ noted that four medical experts disagreed. (*See* AR 23, 454.) Two of those experts—psychologists Ted Shore and Dan Whitehead—personally tested Clark, including conducting intelligence and mental-status examinations. (AR 21, 248-54, 458-63.) In particular, the ALJ gave "great weight" to Dr. Shore's opinion because he is "an expert in the claimant's impairment and based his opinion on a thorough evaluation of the claimant." (AR 23.) The treating doctor could not have considered Dr. Shore's evaluation, because it took place after she gave her contrary opinion. (AR 454, 457-58.) By "noting" the "conflicting medical opinions in the record, which themselves were based on independent clinical findings," the ALJ satisfied the "specific and legitimate reasons" standard. *Brumfield v. Astrue*, 281 F. App'x 681, 683 (9th Cir. 2008) (citation omitted); *see also Flores v. Comm'r of Soc. Sec.*, 237 F. App'x 251, 252 (9th Cir. 2007).

### 2. *Mental Status Examinations*

Apart from the medical-opinion discussion, which was by itself sufficient justification to disregard the treating doctor's opinion, the ALJ also pointed out that Clark showed only "mild limitations on mental status examinations." (AR 23.) If a treating doctor's opinion is "inadequately supported by clinical findings," the ALJ may reject it. *Gopher v. Comm'r of Soc. Sec.*, __ F. Supp. 3d __, No. 1:16-cv-03100-MKD, 2017 WL 5135360, at *12 (E.D. Wash. Sept. 25, 2017).

Clark argues, however, that this is not a specific and legitimate reason for discounting Dr. Birnbaum's opinion, because: (1) the ALJ's analysis is conclusory, and (2) that conclusion isn't supported by the evidence, which the ALJ either mischaracterizes or cherry-picks. The "ALJ must do more than offer his conclusions." *Orn*, 495 F.3d at 632 (citation omitted). And the ALJ must not "selectively focus[]" on aspects of the medical record "which tend to suggest non-disability," *Edlund v. Massanari*, 253 F.3d 1152, 1159

3

(9th Cir. 2001), nor support findings with an "inaccurate characterization of the evidence," *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

But the ALJ committed none of those sins. The ALJ accurately summarized the relevant medical evidence and properly focused on the mental status examinations. There are at least 36 of those exams in the record,[1] and they make up the majority of Clark's mental-health evidence, especially with regard to clinical findings. (*See generally* AR 248-558.) For example, the ALJ offered this balanced summary of the mental-status-examination results within the eligibility period, noting all of Clark's areas of difficulty:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant generally displayed impaired insight and judgment on examination. Further, she showed signs of mildly to moderately decreased intellect, concentration, and memory. However, her thought process was normal, she was generally able to follow the conversation at her appointments, and she often showed no difficulty with concentration or memory at her routine appointments, suggesting her limitations were at most moderate.

(AR 18 (citations omitted).) Later, in discussing these same examinations, the ALJ pointed out that "she often displayed mildly impaired insight and judgment, and rarely demonstrated impaired language, thought content, intellect, memory, concentration, and attention." (AR 20 (citation omitted).) Finally, the ALJ explicitly considered Clark's Global Assessment of Functioning scores, which were included in many of the mental-status results, and which ranged "from 48, suggestive of serious symptoms, to 75, suggestive of transient symptoms." (AR 23-24.)

Because the ALJ's examination-results summary was detailed and thorough, the only question is whether his conclusion about the data was rational. Clark's mental-status results ranged from nearly spotless (*see, e.g.*, AR 274, 282, 354, 372) to more impaired,

---

[1] Nine of the mental status examinations fell outside the disability-eligibility period (*see generally* AR 419-531), leaving 27 exams within that timeframe.

4

including tangential thoughts, flat affect, depression, and anxiety (*see, e.g.*, AR 332, 352). Once she even had slurred speech. (AR 332; *cf.* AR 524 (another slurred-speech result, but outside the eligibility period).) As for her GAF scores, during the relevant timeframe she had five in the "transient" (80-71) or "mild" range (70-61), two in the "moderate" range (60-51), and three in the "serious" range (50-41); she had no scores in the top two GAF decile ranges (superior or good) nor any in the bottom four ranges. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (defining GAF ranges); (AR 253, 262, 272, 339, 346, 374, 537, 541, 548, 551 (Clark's GAF scores)).

Clark may quibble with the ALJ's conclusion that this amounts to only mild limitations, but it was a rational reading of the record. Thus, Clark's mental-status results were a specific and legitimate reason for discounting her treating doctor's opinion.

### 3. *Other Reasoning*

Finally, Clark assails the ALJ's finding that her treating doctor's opinion "is inconsistent with the claimant's relatively normal activities of daily living." (*See* AR 23.) Because the preceding analysis already fully justifies the ALJ's decision, any error as to this final ground is harmless and the Court need not address it. *See Rounds*, 807 F.3d at 1007 ("[T]he error was harmless because it was 'inconsequential to the ultimate nondisability determination.'" (citation omitted)); *Minnick v. Berryhill*, Case No. C17-93 BAT, 2017 WL 4174330, at *3 (W.D. Wash. Sept. 21, 2017) ("[E]ven if some of the other reasons are invalid, because the ALJ gave one valid reason supported by substantial evidence, any error the ALJ might have made is harmless." (citation omitted)).

## C. Regulatory Factors

Even if the treating doctor's opinion did not merit "controlling weight," Clark contends the ALJ erred by not using the correct procedure to determine what lesser weight to give it. Defendant did not respond to this argument. "When a treating physician's opinion is not controlling, it is weighted according to [regulatory] factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the

physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). "*Trevizo* does not demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them." *Hoffman v. Berryhill*, Case No. 16-cv-1976-JM-AGS, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017).[2]

In this case, as in *Trevizo*, there is no indication that the ALJ considered certain mandatory factors, such as "the length of the treating relationship, the frequency of examination, [or] the nature and extent of the treatment relationship." *Trevizo*, 871 F.3d at 676 (citation omitted). From the medical record, it appears that Dr. Birnbaum treated Clark from September 2013 to November 2014. (*See* AR 406-07, 419-20, 472-73, 557-58.) But the ALJ never mentions this. The closest the ALJ gets is discussing relevant dates throughout Clark's psychiatric treatment history, noting that Clark "presented for mental health treatment in April 2012, indicating that she saw a therapist briefly in 2011," and that she "received therapy and psychiatric treatment approximately monthly through November 2014." (AR 20.) Nothing in the ALJ's decision suggests that he considered the length, frequency, or nature of Clark's specific relationship with Dr. Birnbaum. "This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676; *see also Laborin v. Berryhill*, 692 F. App'x 959, 961 (9th Cir. 2017) ("The ALJ did not evaluate Dr. Tran's opinion in light of the factors set forth in 20 C.F.R. § 404.1527(c). This failure by the ALJ is reversible legal error." (citation omitted)).

## D.  Harmless Error

While not contesting the regulatory-factor error, defendant argues that this Court should uphold the ALJ's final determination. (*See* ECF No. 27-1, at 8.) "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*,

---

[2] *Hoffman* analyzed an earlier version of the *Trevizo* decision, but the relevant language is the same on this issue in both *Trevizo* opinions. *Compare Trevizo v. Berryhill*, 862 F.3d 987, 997-98 (9th Cir. 2017), *with* 871 F.3d at 675-76.

6

681 F.3d 1047, 1054 (9th Cir. 2012). Among other factors, the harmless-error analysis turns on: "the likelihood that the result would have been different, an awareness of what body . . . has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings," and humility about generalizing "too broadly about particular kinds of errors." *Id.* (citation omitted).

The procedural error here caused no prejudice. According to the record, Clark saw psychiatrist Dr. Birnbaum 12 times in 14 months for mental status examinations, treatment, and medical prescriptions. (*See* AR 472-75, 480-81, 496-97, 507-08, 512-13, 530-31, 536-37, 540-41, 547-48, 550-51, 557-58; *see also* AR 406-07, 419-22, 427-28, 443-44 (duplicate reports).) The ALJ should have considered these facts before giving Dr. Birnbaum's opinion "little weight." (*See* AR 23.) But it wouldn't change the outcome. These details merely add a feather to Clark's side of the scales of justice, not nearly enough to overcome the pile of bricks on the other side: four contrary opinions (especially Dr. Shore's assessment, which merited "great weight") and years of mental status examinations showing only "mild limitations." (*See id*.) Furthermore, the ALJ twice asserted that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527" (AR 18, 22); he simply didn't memorialize all the relevant facts considered. But since the ALJ ruled two years before *Trevizo* clarified this requirement, the ALJ's error should not undermine public confidence in social security proceedings. Thus, Clark has not carried her burden of proving that the error affected her substantial rights.

## **CONCLUSION**

After properly justifying his decision not to accord the treating doctor's opinion "controlling weight," the ALJ erred by giving it "little weight" without considering all the appropriate regulatory factors. But this error did not affect Clark's substantial rights and so is harmless. Thus, the Court recommends that plaintiff's summary judgment motion (ECF

7

No. 26) be denied, that defendant's cross-motion for summary judgment (ECF No. 27) be granted, and that the denial of disability benefits be affirmed.

The parties must file any objections to this report by February 12, 2018. *See* 28 U.S.C. § 636(b)(1). A party may respond to any such objection within 14 days of being served with it. *See* Fed. R. Civ. P. 72(b)(2).

Dated: January 29, 2018

Hon. Andrew G. Schopler
United States Magistrate Judge